PARIENTE, J.,
concurring.
I concur -in the reversal for a new penalty phase in light of Hurst v. State (Hurst), 202 So.3d 40 (Fla. 2016), cert. denied No. 16-998, — U.S. —, 137 S.Ct. 2161, 198 L.Ed.2d 246, 2017 WL 635999 (U.S. May 22, 2017), based on the lack of a jury’s unanimous recommendation for death. Although the per curiam opinion does not address proportionality because we are reversing for a new penalty phase, I have serious concerns in this case about whether the death sentence is proportionate for this eighteen-year-old with significant mental health mitigation.[9]
The defendant was eighteen years old at the time of the crime,‘ and the trial court found two statutory mitigators (age and under the influence of extreme emotional distress) and numerous nonstatutory miti-gators—including that defendant suffers from frontal lobe brain cjamage, bipolar disorder, schizoaffective disorder, complex partial seizure disorder, hallucinations, and *571 diminished control over inhibitions, was abandoned by his father, grew up in a disadvantaged and abusive home, has a severe substance abuse problem which aggravated a neurological disorder, along with the possibility that the defendant was misdiagnosed and treated'for ADHD. The trial court did not ascribe great weight "to any of this mitigation.-However, a'review of the record indicates that Bargo’s mental health mitigation reaches far back into his childhood, rather than emanating from evaluations occurring after the murder occurred.
By the age of fourteen or fifteen, Bargo was self-harming. Dr. Berland testified that records “indicated ... a couple times where , [the defendant] had suicidal ideation, which is typical of someone who has a partial complex seizure disorder.” Further, when the defendant was in ninth grade and a subject of the Michigan Juvenile Justice System, a psychologist suggested that the defendant be sent to a mental institution. Rather than being institutionalized, Bargo was sent to boot camp for six months, during which he also attended counseling.
In March 2009, approximately two years before the crime in this case, Bargo was diagnosed with bipolar disorder diagnosis rapid cycling. Although not taking medication at the time of the crime, Bargo had been prescribed several strong medications in the past.
On this record, I am unable to conclude that the sentence should be reduced to life based on proportionality. However, our case law indicates that reliable, uncontro-verted evidence of mental health mitigation coupled with age indicates that a sentence of death may be disproportionate, even in light of substantial aggravation. See, e.g., Crook v. State, 908 So.2d 350, 352, 358 (Fla. 2005). Likewise, upon retrial, depending on the jury findings and verdict, the facts of this case may compel the conclusion that a sentence of death for this eighteen-year-old defendant with substantial mitigation is disproportionate,

. If the Court were to conclude that the death sentence was disproportionate based on the record, as we did in Wood v. State, 209 So.3d 1217 (Fla. 2017), it would then be bur obligation to reduce the death sentence to life rather than remand for a new penalty phase.